[Cite as *In re G.Y.*, 2022-Ohio-4560.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

IN RE:

    G.Y.,

ADJUDGED ABUSED CHILD.

[MADISON A. - APPELLANT]

CASE NO. 10-22-05

**O P I N I O N**

---

IN RE:

    G.Y.,

ADJUDGED ABUSED CHILD.

[MADISON A. - APPELLANT]

CASE NO. 10-22-06

**O P I N I O N**

---

**Appeals from Mercer County Common Pleas Court
Juvenile Division
Trial Court No. 32022012**

**Judgments Affirmed**

**Date of Decision: December 19, 2022**

---

**APPEARANCES:**

    *Darin Avery* **for Appellant**

    *Andrew J. Hinders* **for Appellee**

**SHAW, J.**

{¶1} Appellant, M.A. ("Mother"), appeals from both the Mercer County Court of Common Pleas, Juvenile Division's judgment entry that adjudicated her minor child, G.Y., to be an abused child and from the court's judgment entry of disposition, which placed G.Y. in the legal custody of his Father ("Father"). Appellee is the Mercer County Department of Job and Family Services ("MCDJFS").

*Case Background*

{¶2} G.Y. lived with Mother prior to the allegations in this matter. On February 16, 2022, an employee of MCDJFS (the complainant) filed a complaint in the trial court (Case No. 32022012) alleging G.Y., born on March 19, 2020, to be an abused or dependent child. The complaint alleges that there were injuries found on the child on or about June 13, 2021. It further included the following facts about which the trial court should be informed:

> **The child was placed in the temporary custody of the paternal grandmother in Case Number 32021040. This case could not be adjudicated within the statutory time limit, a new case, Case Number 32021050, was filed on September 23, 2021. In that case the parties agreed to a forensic evaluation of parenting ability be completed by mother and live-in friend, G.F. The friend failed to complete that evaluation in the time necessary to adjudicate the Complaint. A third Complaint was filed in Case Number 32022001. That Case came on for an Initial Hearing on January 26, 2022. At that hearing the Court, counsel for the father, the Guardian ad Litem and counsel for the Department had the impression that an agreed adjudication had occurred. On that**

> **date a dispositional hearing was scheduled with all counsel. Subsequent to that date counsel for the mother stated that there had been no agreement. Counsel for the Department then requested an extension of time to adjudicate the matter, which was granted by the Court on February 7, 2022. Counsel for the mother then filed an objection to the motion to extend time and motion to dismiss the Complaint. Following that, on February 11, 2022, the Court approved the Judgment Entry of the January 11, 2022, hearing.**

(Doc. No. 1). The present complaint was filed rather than engage in an ancillary dispute in Case Number 32022001 and according to the present complaint, the child now resides with Father and paternal grandmother. *Id.*

{¶3} At an initial hearing on the complaint, the trial court continued its prior temporary orders made in Case Number 32021040 and an adjudicatory hearing was then scheduled.

{¶4} The adjudicatory hearing was held before the trial court on March 11, 2022. At the conclusion of the hearing, the trial court adjudicated G.Y. an abused child, concluding that he was an abused child as alleged in the complaint. The trial court issued temporary orders placing the child in the temporary custody of the Father, with visits by the Mother to be supervised by the Father or the child's paternal grandmother.

{¶5} The trial court held a dispositional hearing on April 5, 2022, following approximately an hour of pre-hearing discussion with counsel and the guardian ad litem. At disposition, after hearing from counsel for all parties, as well as the

Mother, and the guardian ad litem, the trial court ordered that the child be placed in the legal custody of Father.  A supervised visitation plan for Mother was also approved, with visits by Mother to be supervised, initially by the paternal grandmother, then as such other persons as could be agreed upon.

{¶6} Mother appeals, and this Court consolidated her two appeals.  On appeal, Mother raises the following five assignments of error:

### Assignment of Error No. 1

**The court erred in finding the child abused, as the complainant did not demonstrate abuse as of any legally relevant date.**

### Assignment of Error No. 2

**The court erred by not dismissing the complaint sua sponte.**

### Assignment of Error No. 3

**The court erred by finding that the agency "ha[d] made reasonable efforts * * * to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home."**

### Assignment of Error No. 4

**The court erred by not making a reasonable efforts finding in its dispositional order.**

### Assignment of Error No. 5

**The court erred by granting legal custody to the child's father, as it heard no evidence that that placement served the child's best interest.**

*First Assignment of Error*

**{¶7}** Mother first argues the trial court erred in its finding of abuse because the abuse needed to be demonstrated as of the date of the adjudicatory hearing, March 11, 2022.

**{¶8}** "Juvenile abuse, neglect, and dependency cases are initiated by the filing of a complaint." *In re A.S.*, 9th Dist. Summit No. 29472, 2020-Ohio-1356, ¶ 7, citing *see* Juv.R. 22(A); Juv.R. 10; R.C. 2151.27(A). "The complaint is 'the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction.' " *Id.*, citing Juv.R. 2(F). "The juvenile court has exclusive original jurisdiction * * * [c]oncerning any child who *on or about the date specified in the complaint* * * * is alleged * * * to be * * * [an] abused, neglected, or dependent child[.]" (Emphasis added.) R.C. 2151.23(A)(1).

**{¶9}** Mother cites our 1981 opinion in *In Matter of Parker,* 3d Dist. Van Wert No. 15-79-16 (Jan. 26, 1981). This opinion held simply that under R.C. 2151.35, the court must find the child "is" dependent, referring to the date of the hearing. That statute provides that "[i]f the court at [an] adjudicatory hearing finds from clear and convincing evidence that [a] child is an abused, neglected, or dependent child, the court shall proceed * * * to hold a dispositional hearing and hear the evidence as to the proper disposition to be made * * *." R.C. 2151.35(A)(1).

**{¶10}** However, thereafter, *In Matter of Oard*, 3d Dist. Putnam No. 12-82-4 (Dec. 28, 1983) *5, and subsequent rulings by this Court hold that R.C. 2151.23(A)(1), as amended and set forth above, eliminated prior judicial determinations that the time of the neglect or dependency must include the time of hearing. *See also In Matter of Marshall*, 3d Dist. Putnam No. 12-85-8 (Oct. 22, 1987) *8. Based upon this, we have stated "under R.C. 2151.23(A)(1), the determination of dependency is made as of the date alleged in the complaint." *In re L.S.*, 3d Dist. Union Nos. 14-15-05 and 14-15-06, 2016-Ohio-4999, ¶ 18; *see In re S.H.*, 12th Dist. Butler No. CA2005-01-007, 2005-Ohio-5047, ¶ 12 ("the trial court is to determine the issue of dependency as of the date or dates alleged in the complaint"). We also recognize, as pointed out by *In re S.H.*, that while the abuse "findings the court is required to make from the evidence presented at the hearing relating to the allegations of the complaint are retrospective in nature, the adjudicatory relief the court will order based on those findings and any subsequent factual findings, *is* necessarily current and prospective." (Emphasis added.) *In re S.H.* at ¶ 13. Consequently, the date on which abuse existed must be alleged in the complaint, and the trial court must determine that the circumstances which support a finding of abuse existed as of the date or dates alleged in the complaint. *See id.* at ¶ 9.

**{¶11}** Here, we are concerned then with the state of affairs where the statutes and their judicial interpretation require a finding of abuse at or about the time of the complaint when in fact the child has already for approximately nine months been outside the parental custody and control of the Mother. Appellee states in its brief that "[w]ith the refiling of the complaint the Appellee did present evidence regarding the 'legally relevant date' Appellant alleged is missing." (Appellee's Brief at 2). With regard to the complaint and the need to refile, the Ohio Supreme Court explained in *In re K.M.*, 159 Ohio St.3d 544, 2020-Ohio-995,

> **the General Assembly crafted a solution that balances the rights of parents with the interests of protecting children—it provided for dismissal of a complaint *without prejudice*, which allows an agency to refile a new complaint that very same day and marshal its evidence if it still has concerns about a child's welfare. We acknowledge the burden that a mandatory 90-day deadline in R.C. 2151.35(B)(1) may impose on the already-strained dockets of the juvenile courts. But regardless of the policy concerns raised by dismissal of the complaint, our duty is to apply the statute as written.**

(Emphasis sic.) *In re K.M.* at ¶ 30.

**{¶12}** In this present case, there was evidence to prove that G.Y. is an abused child as alleged in the complaint in that on or about June 13, 2021, the child had bruising which was medically inconsistent with the reported source of the injuries. (Doc. No. 53). And, at that time the child did reside with his Mother and G.F. (*Id.*) Mother's first assignment of error is overruled.

*Second Assignment of Error*

**{¶13}** Mother's argument in her second assignment of error, raised for the first time in her brief to this Court, is that the trial court erred sua sponte in not dismissing the complaint on the basis that a MCDJFS employee (complainant) signed and filed the complaint *on behalf of the agency* and R.C. 4705.01 bars a non-attorney representative from filing the complaint.  (Appellant's Brief at 9).

**{¶14}** According to Juv.R. 10(A), "[a]ny person having knowledge of a child who appears to be * * * unruly, neglected, dependent, or abused may file a complaint with respect to the child in the juvenile court of the county in which the child has a residence or legal settlement, or in which the * * * unruliness, neglect, dependency, or abuse occurred."  Similarly, Ohio Revised Code section 2151.27 provides:  "*any person having knowledge* of a child who appears * * * to be an unruly, abused, neglected, or dependent child *may file a sworn complaint* with respect to that child in the juvenile court of the county in which the child has a residence or legal settlement or in which the violation, unruliness, abuse, neglect, or dependency allegedly occurred."  (Emphasis added.)  R.C. 2151.27(A)(1).

**{¶15}** As in this case, an issue before the Eleventh District Court of Appeals in *In Matter of J.D.B.*, 11th Dist. Portage No. 2017-P-0032, 2019-Ohio-408, was whether an employee of a county department of job and family services may file a complaint to initiate juvenile proceedings.  As stated in that case, "The

determinative issue is whether, by filing and/or amending the Complaint, [employee] Toth was necessarily acting in a representative capacity on behalf of Portage County Job and Family Services' interests. We conclude that she was not doing so based on the plain meaning of the statute and rule, the fundamental purpose of neglect/dependency proceedings, and applicable case law." *Id.* at ¶ 22.

{¶16} Other appellate districts have similarly decided the issue. In *In re F.B.*, 9th Dist. Summit No. 27762, 2016-Ohio-3434, the Ninth District Court of Appeals ruled that "Father has failed to demonstrate that the caseworker acted as a representative of CSB when she filed the complaints in this case. Instead, the record reveals that she herself was a 'person' who had knowledge that the children appeared to be dependent." *Id.* at ¶ 15, citing *see* R.C. 2151.27(A). And, in *In re Leftwich*, 10th Dist. Franklin No. 96APF09-1263 (Apr. 22, 1997), the Tenth District Court of Appeals held: "[B]ecause [the caseworker] Rae had knowledge about the children, she could file a complaint on their behalf and the trial court did not err in permitting the complaint to go forward." *Id.* at *2. We are persuaded by the Courts' reasoning in those cases.

{¶17} In this case, we note that the record reveals that Jamie Miller, an intake investigator with MCDJFS was a "person having knowledge of a child who appears to be neglected or dependent." *See* R.C. 2151.27(A)(1). As the complainant, Ms. Miller filed a sworn complaint with respect to the child. Despite also being an

employee of the agency, the fact that the complainant was a person with knowledge when she filed the complaint is the determining factor. As such, a mere incidental reference to her employment status with the agency in the complaint does not rise to the level of "representing" the agency in violation of R.C. 4705.01. Consequently, we conclude that Mother's argument for dismissal, sua sponte, of the complaint, whether by the trial court or this Court, is not well taken.

{¶18} Mother's second assignment of error is overruled.

*Third and Fourth Assignments of Error*

{¶19} We will consider the third and fourth assignments of error together. In her third assignment of error, Mother argues the trial court erred in connection with its lack of a reasonable efforts finding and that there was no longer an emergent event. In her fourth assignment of error, Mother argues the trial court erred in not making a reasonable efforts finding in its dispositional entry.

{¶20} R.C. 2151.419(A)(1) requires that the trial court make reasonable efforts findings in its judgments or orders following "any hearing held pursuant to section * * * 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home[.]" R.C. 2151.353(I) further provides that, "[t]he court shall not issue a [post-adjudicatory] dispositional order * * * that removes a child from the child's home unless the court

complies with section 2151.419 of the Revised Code and includes in the dispositional order the findings of fact required by that section."

**{¶21}** However, R.C. 2151.419(A)(1) further provides that:

**If the agency removed the child from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.**

**{¶22}** Mother acknowledges that in this case, at the time of adjudication, the trial court made a finding under R.C. 2151.419 that "the Department was unable to provide services to prevent the need for removal of the child from the home due to the emergent nature of the events leading to the injuries to the child." (Doc. No. 53 at p. 2). Here, then, it is pertinent and relevant to look at testimony regarding a safety plan with Mother. At the crux of the safety plan, according to the intake investigator with MCDJFS, was the agency "asking that [G.F.] not be around [the child] at all, that's he is not providing childcare, that he's not in the home." (Mar. 11, 2022 Tr. at 40). And yet, despite the safety plan, Mother testified at the adjudication hearing that she was currently still living with G.F. (*Id.* at 72).

**{¶23}** Notably, less than thirty days later, at the dispositional hearing there was no indication in the record that anything had changed regarding the Mother and G.F. Accordingly, referring to the pre-hearing discussions, counsel for MCDJFS

stated that: "The options that we have been discussing now for at least the last hour are whether or not it would be legal custody to the father and the Department could be dismissed as a party, whether it be legal custody to the father with the Department remaining to provide services to the mother and to her significant other, or whether it be temporary custody to the father with services to continue." (Apr. 5, 2022 Tr. at 4). At the conclusion of the hearing, the trial court issued a grant of legal custody that placed the child with the Father.

{¶24} Based on the foregoing facts of this case, Mother's arguments regarding a lack of reasonable efforts findings are not well taken, and the third and fourth assignments of error are overruled.

*Fifth Assignment of Error*

{¶25} In her final assignment of error, Mother argues that the record contains no evidence that a disposition of legal custody to the Father is in the best interest of G.Y.

{¶26} After a child has been adjudicated as dependent, neglected, or abused, the trial court can make an order of disposition as set forth in R.C. 2151.353(A). *In re J.R.*, 3d Dist. Allen No. 1-14-22, 2015-Ohio-643, ¶ 17. " 'The choice among dispositional alternatives is left to the sound discretion of the [trial] court.' " *Id.,* citing *In re M.D.*, 10th Dist. Franklin No. 07AP-954, 2008-Ohio-4259, ¶ 20. "Because legal custody is a 'statutorily permitted dispositional alternative, we must

find that the trial court abused its discretion in order to reverse its determination.' "

*Id.,* quoting *In re A.J.*, 10th Dist. Franklin Nos. 14AP-284, 14AP-285, 14AP-286, and 14AP-287, 2014-Ohio-5046, ¶ 35, citing *In re M.D.* at ¶ 22. In making its determination, the best interest of the child is the trial court's primary consideration. *Id.* at ¶ 18 (citations omitted); *In re T.P.,* 12th Dist. Clinton No. CA2012-02-004, 2012-Ohio-4614, ¶ 8, citing *In re Brown*, 142 Ohio App.3d 193, 198 (12th Dist. 2001) and *In re L.C.*, 2d Dist. Clark No. 2010 CA 90, 2011-Ohio-2066.

**{¶27}** Additionally, in reviewing this assignment of error, we recognize that R.C. 2151.35(A)(1), which governs juvenile court hearing procedures, provides that "the juvenile court may conduct its hearings in an informal manner." R.C. 2151.35(B)(2)(b) allows the trial court to admit any evidence that is "material and relevant," including hearsay, opinion, and documentary evidence. *See also* Juv.R. 34(B)(2).

**{¶28}** Here, the trial court ordered the disposition of legal custody to the Father pursuant to R.C. 2151.353. The trial court's oral reasons for that placement referenced pre-hearing discussions and must be set forth for a full understanding of the final decision. The trial court stated:

> **This is not an easy case. This is not an easy situation. Obviously, we spoke about it at length before even coming on the record.**
>
> **It was extremely disturbing to the court to hear at the adjudication that your child had been abused and while no one is**

> **pointing the finger at you, that probably leads[1] one individual and your statements today indicate that you and [G.F.] want [G.Y.] back in your lives.**
>
> **I'm not sure how as a mother loves her child, I have no doubt in my mind, ma'am, zero doubt, but you're faced with an uncomfortable choice. And it's a choice that based upon what I've heard in the adjudication, based upon what I've heard today, I don't think you're ready to make that choice. I think the child is – and, again, the focus here is the safety and security of [G.Y.]. I feel it is in his best interest and absolutely it is in his best interest that legal custody go to father.**

(Apr. 5, 2022 Tr. at 9-10).

{¶29} Based on the foregoing, while the trial court's dispositional entry should have reiterated that court's express finding of best interest made at the hearing, the record indicates the trial court clearly determined and found legal custody with the father to be in G.Y.'s best interest, and that finding is supported by competent, credible evidence. *See In re T.P.* at ¶ 14 (similarly, noting that "[w]hile the juvenile court's dispositional entry should have included that court's express findings of best interests," the record indicated that the court found temporary custody to maternal grandmother would be in the child's best interest, and that finding was supported by competent, credible evidence). Further, we also note that in its adjudication judgment entry, the trial court specifically found that, based upon

---

[1] Appellee believes that at the hearing, the trial court actually said "leaves." (Appellee's Brief at 7).

the injuries to the child, placement outside of the Mother's home was in the child's best interest.  (Doc. No. 53 at p. 2).

{¶30} Accordingly, Mother's fifth assignment of error is not well taken and is overruled.

{¶31} The judgments of the trial court are affirmed.

***Judgments Affirmed***

**MILLER, J., concurs.**

**WILLAMOWSKI, J., concurs in Judgment Only.**

**/jlr**